**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| WILLIAM O. DALE; A. JAMES STREELMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| EQUINE SPORTS MEDICINE & SURGERY | ) | |
| RACE HORSE SERVICE, PLLC; | ) | |
| DR. BOYD CLEMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES FROM**
**VETERINARY MALPRACTICE/NEGLIGENCE**

1.      This is an action stemming from the medical negligence and gross negligence of

Defendants in providing medical care for a racehorse, Rawhide Canyon.

**PARTIES**

2.      Plaintiff William O. Dale was one of the owners of Rawhide Canyon and is a

citizen domiciled in Clinton, Missouri.

3.      Plaintiff A. James Streelman was one of the owners of Rawhide Canyon as the

owner of Dutch Masters III and is a citizen domiciled in Anaheim, California.

4.      Defendant Equine Sports Medicine & Surgery, Race Horse Service, PLLC

(ESMS) is a licensed veterinarian clinic organized in and under the laws of the State of

Texas specializing in the medical care and treatment of racehorses and is domiciled in

Weatherford, Texas as a corporate citizen of Texas.

5.      Defendant Dr. Boyd Clement was a veterinarian/employee of ESMS, licensed to

practice veterinarian medicine in the States of Texas and New Mexico who is a citizen of

and domiciled in Albuquerque, NM.

1

## JURISDICTION AND VENUE

6.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the Parties pursuant to 28 U.S.C. § 1332.

7.      Venue lies in this district pursuant to 28 U.S.C § 1391.

## BACKGROUND APPLICABLE TO ALL CAUSES OF ACTION

8.      Plaintiff was the owner of a racehorse, Raw Hide Canyon, foaled in January,

2011.

9.      Raw Hide Canyon was purchased as a 2-year old filly for $36,000.

10.      Rawhide Canyon first raced at Sunland Park on March 22, 2013, placing 8th in a

Futurity Trial.

11.      Rawhide Canyon then raced at Ruidoso Downs on May 24, 2013, placing 2nd in

another Futurity Trial.

12.      Rawhide Canyon then raced on June 10, 2013 at Ruidoso Downs in a Maiden

race, placing first.  Rawhide Canyon won by several lengths with a time of 17:37 for 350

yards.  Such race was one of the fastest 350-yard races of the summer.  Rawhide

Canyon's run placed her as the 3rd/4th fastest qualifying times for the grade 1 Ruidoso

Downs Futurity.

13.      The New Mexico Racing Commission, improperly placed Rawhide Canyon 10th

in the June 10, 2013, race as appears on Equibase, for an alleged positive ventipulman

*urine* test.  The NMRC did not perform the required blood test for such medication, has

no evidence of a positive blood test, and has failed for 2 years to hold the requisite

hearing on such charge.

14.       On July 4, 2013, Rawhide Canyon placed 8th in a Futurity Trial at Ruidoso

Downs.

15.     On August 16, 2013, Rawhide Canyon raced at Ruidoso Downs, placing 5th in a Futurity Trial.

16.     Rawhide Canyon raced on September 21, 2013, at Zia Park, placing 9th at this Futurity Trial.

17.     On October 28, 2013, Rawhide was entered and raced in a Maiden race at Zia Park, placing 5th.

18.     On December 7, 2013, Rawhide Canyon entered a Futurity Trial at Hialeah Park, placing 6th.

19.     One month later, on January 10, 2014, Rawhide Canyon race at Hialeah Park, placing 2nd in a Maiden race.

20.     Finally, Rawhide Canyon raced again on January 26, 2014 at Hialeah Park, placing first in a Maiden race.

21.     A reasonable career life for horses in similar condition and training as Rawhide Canyon is four years.

22.     Because of her documented racing history and wins, future lost income stemming from Rawhide Canyon's racing is discernible and not speculative.

23.     Not uncommon, Rawhide Canyon underwent minor knee surgery in the spring of 2014.

24.     Rawhide Canyon's surgery was performed by Dr. Fisch.  The post-operative report indicates the surgery went well and without complication.

25.     Rawhide Canyon completed rehabilitation at Sunland Park with trainer John Stinebaugh.  Rawhide Canyon was in excellent physical condition post-operatively and

after rehabilitation.

26.     Defendant Clement was the ongoing treating physician for Rawhide Canyon, as well as several other horses in the custody of trainer John Stinebaugh.

27.     Dr. Clement examined the horses daily that were under John Stinebaugh's custody, at Stinebaugh's stables.

28.     Subsequent to her rehabilitation, Dr. Clement recommended an injection of Hyaluronic acid for joint health/stability.  This a standard practice in the veterinarian industry.

29.     Defendant Clement prescribed the Hyaluronic joint injection for Rawhide Canyon.  Another veterinarian, Dr. Ivy, with Defendant ESMS injected Rawhide Canyon in mid-June while Clement was on vacation.

30.     Dr. Clement returned from vacation and resumed his care of Rawhide Canyon as well as other horses.

31.     Within 10 days of Rawhide Canyon receiving the Hyaluronic injection, her condition deteriorated significantly.

32.     Rawhide Canyon's trainer, John Stinebaugh, discussed the obvious signs of infection with Dr. Clement.  Despite the deteriorating condition and signs of infection, Dr. Clement failed and refused to treat such infection.

33.     Instead, Dr. Clement treated Rawhide Canyon with a significant number of other medications, including the anti-inflammatory drug Butizolin, medication for stomach pain stemming from the anti-inflammatory and pain, pain medication and ibuprofen creams.

34.     Over the next 6 weeks Rawhide Canyon experienced intense pain and suffering.

Her condition deteriorated miserably.  The trainer provided intensive care treatment of Rawhide Canyon

35.     Dr. Clement refused to consider infection as the cause of Rawhide Canyon's condition, despite pleas from her trainer.

36.     In fact, Dr. Clement "bet a steak dinner" with the trainer that Rawhide Canyon did not have an infection.

37.     Dr. Clement finally permitted blood tests.  Those tests showed an extensively high white blood cell count, in the thousands, indicating a severe infection.

38.     Six (6) weeks after Rawhide Canyon first showed severe signs of infection, treatment was begun.

39.     Rawhide Canyon was treated with 4-5 liters of fluid laced with antibiotics.  For the 1st time in six (6) weeks, treatment for extensive infection began, administered by another veterinarian, Dr. Howard.

40.     Rawhide Canyon's condition improved slightly and enough to travel with her owner.  A few days later, however, her knee was the size of a football and she was extremely ill.

41.     Owner Bill Dale brought Rawhide Canyon to the Equine Sports Clinic.  After ten more days of treatment, the clinic advised that the infection was too widespread and she could not be saved.

42.     Equine sports clinic sought permission to euthanize Rawhide Canyon.

43.     During this same period of time, several other horses experienced similar conditions under the care of Dr. Clement.

44.     Decked in Snow developed an infection post hyaluronic acid injection.  Dr.

Clement again refused to treat for infection.  Her condition deteriorated quickly and she

was put down in Utah.

45.     Devil wears Prada, was another mare that received a hyaluronic injection.  After

Dr. Clement's failure to treat for such infection, she was transferred to a veterinarian

hospital. After 3 months and tens of thousands of dollars, she was able to be saved.

46.     Valentino Delao experienced the same condition under Dr. Clement's care.

Without treatment for infection, he never ran again and was put down in spring of 2014.

47.     Similarly, Just a Real Winner received treatment from Dr. Clement for joint

inflammation.  He again failed to treat for infection and was also put down in 2014.

**FIRST CAUSE OF ACTION:**
**VETERINARIAN MALPRACTICE**

48.      Plaintiffs re-allege each and every above-enumerated paragraph as if fully set

forth herein.

49.     Veterinary malpractice claims arising in New Mexico apply the same standards as

applied to physicians and surgeons in medical malpractice cases.

50.     The elements of a medical negligence claim are:

> (1)  the defendant owed the plaintiff a duty of care under the law;
> (2)  the defendant breached that duty;
> (3)  the defendant's breach was the proximate cause of the injuries the
>       plaintiff suffered.

Blauwkamp v. Univ. of N.M. Hosp., 114 N.M. 228, 231, 836 P.2d 1249, 1252
(Ct.App.1992)

51.     Dr. Clement was the primary treating veterinarian of Rawhide Canyon and other

horses.

52.     Dr. Clement had a duty to conform to the standard of care in the treatment of

Rawhide Canyon.

6

53.     Dr. Clement failed and even refused to conform to such standard of care in failing to consider that Rawhide Canyon's condition was caused by an infection and to treat for such infection.

54.     Dr. Clement administered multiple and other medications to mask the symptoms Rawhide Canyon was experiencing, instead of treating the underlying infection.

55.     Dr. Clement went so far as to bet a "steak dinner" that Rawhide Canyon did not have an infection.

56.     Blood work established an excessively high level of white blood cells consistent with extensive infection.

57.     Dr. Clement failed to treat Rawhide Canyon for more than six (6) weeks for an infection.

58.     During the period that Dr. Clement failed to properly treat Rawhide Canyon, she experienced extensive pain and discomfort as evidenced by her demeanor and actions.

59.     Rawhide Canyon's trainer engaged in extensive around the clock care to keep her comfortable and treated per Dr. Clement's direction.

60.     The failure to properly diagnose and subsequently treat Rawhide Canyon for infection lead to her untimely death.

61.     Plaintiff has been harmed as a result of Dr. Clement's negligence.

**SECOND CAUSE OF ACTION**
**GROSS NEGLIGENCE**

62.     Plaintiffs re-allege each and every above-enumerated paragraph as if fully set forth herein.

63.     Gross negligence means conduct deemed to be willful, wanton, malicious, reckless, oppressive or fraudulent. Ruiz v. S. Pac. Transp. Co., 1981-NMCA-094, 97 N.M. 194, 201, 638 P.2d 406, 413

64.     Dr. Clement should have been aware of the possibility of infection, post-joint injection.

65.     Observations of Rawhide Canyon's symptoms indicated that she suffered from an infection.

66.     Dr. Clement failed to consider and test for possible infection for more than six (6) weeks.

67.      A doctor of similar training and experience such as Dr. Clement would have considered the possibility of infection.

68.     A doctor of similar training and experience such as Dr. Clement would have tested for infection and/or treated Rawhide Canyon for infection.

69.     The failure to consider and test for infection in Rawhide Canyon exhibited an extreme degree of risk.

70.     The failure to consider, test and treat Rawhide Canyon for infection had a high probability and magnitude of causing harm.

71.     Because of his training and experience, Dr. Clement had actual and/or subjective awareness of the risks in failing to treat for infection.

72.     Dr. Clement acted with conscious indifference to the rights, safety, or harm he could cause by failing to test and treat Rawhide Canyon for infection.

73.     Plaintiff was harmed as a result of Dr. Clement's gross negligence.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE UNFAIR TRADE PRACTICES ACT,
### NMSA 1978 § 57-12-1 *ET SEQ.*

26.     Plaintiffs incorporate and re-allege all preceding paragraphs as though fully set forth herein.

27.     Defendants used unfair or deceptive trade practices in the regular course of their trade or commerce in connection with the sale of veterinarian services to Plaintiffs.

28.     Defendants either knowingly OR without exercising due diligence in the recommendation, prescription and administration of medication to racehorses under the care of Plaintiffs, made false, negligent OR misleading statements and representations in connection with the sale of their services contrary to the New Mexico Unfair Practices Act, NMSA 1978 57-12-1 *et seq.,* including but not limited to:

   a.  Recommending the administration of a medication containing contaminated substances or failing to properly prevent the contamination of substance administered to Rawhide Canyon;

   b.  using exaggeration or ambiguity as to a material fact, i.e. that medication/substance Defendants prescribed and administered to racehorses in the care of Plaintiffs' agent was sound and that the horse did not have an infection as a result of the substance administered;

   c.  Omitting or concealing information crucial to Plaintiffs' agreement to allow Defendants to administer medication/substances to racehorses in the care of Plaintiffs' agent;

   d.  Failing to state a material fact regarding the provision of veterinarian services to Rawhide Canyon;

29.     Defendants' representations may have tended or served to deceive OR unintentionally mislead persons, including Plaintiffs.

9

30.     Defendants took advantage of Plaintiffs' lack of knowledge, ability,

experience capacity and reliance on Defendants to a grossly unfair degree.

31.     As a result, Plaintiffs suffered damages in an amount to be proven at trial.

32.     Defendants' actions entitle Plaintiffs to costs and attorney's fees.

Defendants' actions and failures entitle Plaintiffs to treble damages.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for:

1.     Judgment in favor of Plaintiffs finding that Rawhide Canyon's death was as a

result of negligent medical treatment.

2.     Compensatory damages including non-speculative lost profit/earnings as a result

of Rawhide Canyon's death.

3.     Consequential damages according to proof;

4.     Exemplary damages according to proof;

4.     Interest on such damages awarded at the legal rate from the date of judgment until

paid;

5.     Attorney fees and costs; and

6.     Any and all other relief that may be appropriate as deemed by this Court.

Respectfully submitted this 24th day of August, 2016.


*/s/A. Blair DunnVetrina*
A. Blair Dunn, Esq.
NM BAR # 121395
abdunn@ablairdunn-esq.com

10

Dori E. Richards, Esq.
AZ#  017453
dorierichards@gmail.com


*Attorneys for Plaintiff*
Western Agriculture, Resource and
   Business Law Advocates
1005 Marquette Ave NW
Albuquerque, NM 87107
(505)750-3060; Fax (505)225-8500